UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


| | | |
|---|---|---|
| RIDE, INC., *et al.*, | : | Case No. 3:12-cv-271 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| JACK A. BOWSHIER, *et al.*, | : | |
| | : | |
| Defendants. | : | |


## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND THIRD PARTY DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 50)


This civil action is before the Court on the motion for partial summary judgment filed by Plaintiffs Ride, Inc. and Cycles Unlimited, LLC, and Third Party Defendant Dean V. Kruse (Doc. 50) and the parties' responsive memoranda (Docs. 59, 62).

## I.    BACKGROUND FACTS

Plaintiffs filed suit against Defendants Jack A. Bowshier ("Jack Sr."); Jack D. Bowshier ("Jack Jr."); Just Wheels Used Cars, Inc.; Sky River, Ltd.; Wild Rides, Inc.; and Jalin Nautical, LLC.  (Doc. 31)  Jack Sr. and Jack Jr. responded with several counterclaims and asserted third party claims against Kruse.[1]  (Doc. 41).

---

[1] The counterclaims and third party claims were not asserted on behalf of the other four Defendants.

## II.    UNDISPUTED FACTS[2]

1. Plaintiffs, Ride, Inc. and Cycles Unlimited, LLC (collectively "Competition Accessories"), are a retail motorcycle, all-terrain vehicle, accessory, and service dealership in Springfield, Ohio.  (Doc. 50, Ex. I at ¶ 6).

2. Defendants, Jack Sr. and Jack Jr., are former employees of Ride, Inc. who were terminated in January 2011.[3]

3. Third Party Defendant, Dean Kruse, was one of the owners of the shares of Ride, Inc. and was the sole owner of the units of Cycles Unlimited, LLC.  (*Id.* at ¶ 8).

4. Plaintiffs, Jack Sr., and Jack Jr., are involved in litigation pending in the Superior Court of Allen County, Indiana (Cause No. 02D01-1101-PL-18).

5. Shawn Bowshier, the current general manager of the Plaintiff corporations, was originally involved with Competition Accessories when it was owned by Active Retail, LLC.  (Doc. 50, Ex. I at ¶ 9).

6. Shawn Bowshier owned a small percentage of the shares of Active Retail, LLC, and held the dealer license with the State of Ohio.  (*Id.* at ¶ 10).

7. When the other owners of Active Retail, LLC wanted to sell Competition Accessories, Shawn Bowshier talked to Jack Sr. about a possible investment for the purpose of purchasing the business.  (*Id.* at ¶ 11; Doc. 52 at 17).

8. Jack Sr. then contacted Kruse and others about becoming involved in a potential purchase of Competition Accessories.  (Doc. 52 at 18-21).

9. On February 24, 2003, Kruse, Shawn Bowshier, and Jack Jr. entered an agreement for the sale of shares in Ride, Inc. and units of Cycles Unlimited, LLC (the "2003 Agreement").  (Doc. 50, Ex. A; Ex. I at ¶ 14).

10. Initially, 90% of the shares of Ride, Inc. and 100% of the units of Cycles Unlimited, LLC were owned by Kruse, and 10% of the shares of Ride, Inc. were owned by Shawn Bowshier.  (*Id.*, Ex. A at 1; Ex. I at ¶ 12).

---

[2] *See* Doc. 55 and Doc. 60.

[3] Although the parties dispute the exact date of Defendants' termination (*Id.*, Ex. I at ¶ 21; Doc. 59, Ex. A ¶ 14), the Court determines that the exact date is not material.

11. These shares and units were purchased by Kruse and Shawn Bowshier from Active Retail, LLC just prior to the 2003 Agreement. (*Id.*, Ex. I at ¶ 12).

12. Kruse was required to secure financing, and to guarantee the indebtedness of Ride, Inc. and Cycles Unlimited, LLC, totaling $4,108,000,[4] and he was required to escrow $350,000 for security. (*Id.* at ¶ 14).

13. Under the 2003 Agreement, the purchase price for the shares and units was $2 million, plus interest. (Doc. 50, Ex. A at 3).

14. This obligation was to be paid in 108 consecutive equal monthly installments in the amount of $22,000 each month, beginning May 1, 2003 and ending on April 30, 2013, with any remaining balance to be paid at that time. (*Id.*; Ex. I at ¶ 15).

15. Under the 2003 Agreement, Kruse was to transfer to an escrow agent one of his ninety shares in the corporation for each one ninetieth paydown of the principal of the purchase price, up to 39% of the shares (totaling 49% of the outstanding shares including Shawn Bowshier's initial 10 shares). (*Id.*, Ex. A at 3).

16. Kruse was not obligated to transfer any additional shares until all of the closing conditions were completed under the Agreement, including the payment of the complete remainder of the purchase price and the payment of all of the debts of Ride, Inc. and Cycles Unlimited, LLC. (*Id.*; Ex. I at ¶ 16).

17. The original debt of the Plaintiff corporations that was guaranteed by Kruse was $4,108,000.[5] (*Id.*, Ex. A at 3; Ex. I at ¶ 16).

18. Jack Sr. and Jack Jr. claim that Kruse was thereafter to "deliver the remaining fifty-one percent (51%) of the outstanding shares" to Jack Sr. upon full payment of $2 million, although this is not reflected in the 2003 Agreement. (Doc. 41 at 6).

19. All of the units of the Cycles Unlimited, LLC, the real estate holding company, were to remain owned by Kruse until all 108 payments were made and the other conditions of the 2003 Agreement were met. (Doc. 50, Ex. A at 5).

20. The 2003 Agreement provided that Jack Jr., or his designee, would have the right and option to buy Kruse's membership in Cycles Unlimited for $1.00 upon payment of all amounts due under the Promissory Notes and upon all other "closing conditions" being satisfied. (*Id.* at 8).

---

[4] Defendants dispute the amount of debt Kruse guaranteed, arguing that "the figure of $4,108.00 [sic] is not correct," but provide neither a citation to the record in support nor a separate amount in their disputed facts. (Doc. 60 at 1).

[5] *See* note 4, *supra*.

21.  At the time the 2003 Agreement was executed, Jack Jr. also executed a separate "Irrevocable Designation" designating Jack Sr. "as the person having all rights otherwise held by [Jack Jr.] under said Section 14 to purchase all of the ownership in the LLC now or hereafter held by Dean V. Kruse."  (*Id.*, Ex. B; Doc. 52 at 37-38).

22.  $22,000 payments were received by Dean Kruse until December 3, 2009.  (Doc. 50, Ex. I at ¶ 18).

23.  A few partial payments were made in 2010.  (*Id.*)

24.  This left a balance of $804,683.00 owed to Kruse as of the end of December 2010 when the payments stopped.  (*Id.*)

25.  On February 6, 2004, subsequent to the execution of the 2003 Agreement, an involuntary bankruptcy petition was filed as to Jack Sr. and his wife, Linda Bowshier, in the United States District Court for the Southern District of Ohio.[6]  (*Id.*, Ex. C).

26.  Jack Jr. irrevocably transferred all of his potential ownership rights in Cycles Unlimited, LLC to Jack Sr. on February 24, 2003, approximately one year prior to the filing of Jack Sr.'s bankruptcy petition.  (*Id.*, Ex. B).

27.  Jack Sr. failed to disclose in his bankruptcy filings, including in Schedule B, any claim of any ownership interest, or potential ownership interest in either Ride, Inc. or Cycles Unlimited, LLC.  (*Id.*, Ex. D).

28.  Schedule B of the standard form bankruptcy schedules requires disclosure of all "stock and interests in incorporated and unincorporated businesses." (*Id.*)

29.  On February 17, 2005, Jack Sr. amended his bankruptcy schedules, including Schedule B, but still did not disclose any ownership interests in Ride, Inc. or Cycles Unlimited.  (*Id.*, Ex. E).

30.  In his bankruptcy proceedings, Jack Sr. affirmatively testified that he had no ownership interest or potential ownership interest in Ride, Inc. or Cycles Unlimited.  (*Id.*, Ex. F at 8-9).

---

[6] Defendants deny that the bankruptcy was voluntary. (Doc. 59, Ex. A at ¶ 16; Doc. 60 at 1).  To the extent that this fact is disputed, the Court determines that it is not material.

31. In their Amended Counterclaims and Amended Third Party Claims, Jack Sr. and Jack Jr. claim that they were entitled to obtain ownership in the Plaintiff corporations, Ride, Inc. and Cycles Unlimited, LLC by virtue of the 2003 Agreement, and certain "side" agreements, as follows:

| | **Cycles Unlimited:** | **Ride, Inc.** |
|---|---|---|
| Jack Sr. | 100% | 51% |
| Jack Jr. | 0% | 24.5% |
| Shawn Bowshier | 0% | 24.5% |

(Doc. 41 at 9).

32. Shawn Bowshier is the nephew of Jack Sr. and the cousin of Jack Jr. Shawn Bowshier initially received 10% of Ride, Inc. when Kruse purchased 90% of the entity. Under the 2003 Agreement, Shawn Bowshier's interest was to increase from 10% to 24.5%, *i.e.*, to the same amount as Jack Jr. (Doc. 50, Ex. A).

33. In the Indiana case, Jack Sr. and Jack Jr. made the same claims for breach of contract based upon the 2003 Agreement that they make in this case. (Doc. 50, Ex. G).

34. Based upon the stipulation of Jack Sr.'s counsel and the Final Pretrial Order filed in the Indiana case, the Indiana Court issued a Final Judgment and Order on Motion for Entry of Judgment Regarding Jack A. Bowshier's Interest or Ownership in Ride, Inc.; Ride, Motorcycles, Inc. or Cycles Unlimited; Determination of No Just Cause for Delay and Entry of Judgment. (Doc. 50, Ex. H).

35. The Indiana Final Judgment contained the following final determination by the Indiana Court:

the Courts NOW FINDS, ADJUDGES, AND DECREES:

That Jack A. Bowshier has no interest or ownership in any manner including, but not limited to, an interest or ownership that is: contingent, liquidated, expectant, vested, non-vested, or any other interest or ownership, in Plaintiffs, Ride, Inc.; Ride Motorcycles, Inc. or Cycles Unlimited, LLC. Pursuant to Trial Rule 54(B) the Court expressly determines that there is no just reason for delay, and expressly directs entry of judgment in favor of the Plaintiffs and Third Party Defendant, and against Jack A. Bowshier, as to any such ownership claims.

(*Id.*)

36. There has been a final judicial determination that Jack Sr. has no interest or potential interest in either Ride, Inc. or Cycles Unlimited, LLC by virtue of the 2003 Agreement or otherwise.

37. The Agreement between the parties at issue in this case, specifically contains language granting exclusive jurisdiction for breach of the Agreement in Allen County, Indiana as follows:

> **Governing Law and Forum.** This Agreement shall be governed by and construed in accordance with the laws of the State of Indiana. Each of the Parties hereto agrees that any and all disputes arising out of or related to this Agreement and/or any of the Exhibits hereto and the rights, duties, and obligations established by or arising under this Agreement or said Exhibits or related to the enforcement, default, or breach of this Agreement shall be resolved by a state or federal court located in Allen County, Indiana, and each of the Parties consents to exclusive jurisdiction and venue in such court and each of the Parties irrevocably submits to the personal jurisdiction and venue of such court over them.

> (Doc. 50, Ex. A at 9-10).

On March 18, 2014, subsequent to the filing of Plaintiffs' partial summary judgment motion, the Indiana Court issued an Order confirming its prior determination that Jack Sr. had no rights under the 2003 Agreement. (Doc. 56, Ex. at 7). Following the trial on Jack Jr.'s counterclaim and third party claim for breach of contract, the Indiana court granted Plaintiffs' motion for judgment on the evidence, holding that Jack Jr. had introduced no evidence of damages. (*Id.* at 7-8). The Indiana court then issued a written decision, concluding that Jack Jr. had materially breached the 2003 Agreement and granting Plaintiffs' claim for rescission of the contract. (*Id.* at 12).

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### III.   ANALYSIS

Plaintiffs seek summary judgment on seven of the eight counterclaims and third party claims brought by Defendants.

### A.   Breach of Contract (Count I)

Defendants concede that Plaintiffs are entitled to summary judgment on the breach of contract counterclaim based on the principle of *res judicata*. The Indiana Court determined that the Defendants have no rights under the 2003 Agreement, including no rights in either of the Plaintiff companies. (Doc. 50, Ex. H; Doc. 56, Ex. A). Accordingly, Plaintiffs are entitled to judgment as a matter of law on the breach of contract claim. *See Becker v. State*, 992 N.E.2d 697, 700 (Ind. 2013) ("*Res judicata*, whether in the form of claim preclusion or issue preclusion (also called collateral estoppel), aims to prevent repetitious litigation of disputes that are essentially the same,

by holding a prior final judgment binding against both the original parties and their privies.").

### B.    Breach of Fiduciary Duty (Count II)

Defendants' breach of fiduciary duty claim is brought against Kruse only.  A claim for breach of fiduciary duty has three elements: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe such duty; and (3) an injury proximately resulting therefrom."  *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 738 (S.D. Ohio 2009) (citing *Strock v. Pressnell*, 527 N.E.2d 1235, 1244 (Ohio 1988)).[7]  A business or arm's-length contractual relationship does not give rise to a fiduciary relationship.  *See id.* at 739 (citing *Blon v. Bank One, Akron N.A.*, 519 N.E.2d 363, 367 (Ohio 1988)).

Kruse argues that because the 2003 Agreement was negotiated at arm's length, a fiduciary relationship did not arise.  Ohio defines a fiduciary relationship as one "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."  *See Ed Schory & Sons, Inc. v. Soc. Nat'l Bank*, 662 N.E.2d 1074, 1081-82 (Ohio 1996).  The 2003 Agreement, which was rescinded by the Indiana Court, reflects a business transaction in which each party has distinct interests.

---

[7] Kruse argues that the claim fails under both Ohio and Indiana law.  The Court will apply only Ohio law, but notes that Indiana law is nearly identical.  *See Town of Goodland v. Kessler Tank Co.*, 4:13-cv-82, 2014 WL 1319509, at *2 (N.D. Ind. Apr. 1, 2014) ("To state a claim for breach of fiduciary duty [under Indiana law], a plaintiff has to show: (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary.") (citing *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. App. 2010)).

The judgment of the Indiana Court, that Defendants have no ownership interest in either company, precludes the existence of a fiduciary relationship on the alleged basis that Defendants were minority stockholders. *See Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. App. 2007) ("Rescission of a contract is the annulling, abrogating, or unmaking of a contract."). Because Defendants have failed to demonstrate a genuine issue of fact regarding the existence of a fiduciary relationship, Kruse is entitled to judgment as a matter of law.

### C. Conversion (Counts III and IV)

Defendants' conversion claims involve two types of property: personal property and shares of Ride, Inc. (Doc. 41 at 13-14). The elements of a conversion claim are: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Dice v. White Family Cos.*, 878 N.E.2d 1105, 1109 (Ohio App. 2007).

#### 1. *Personal Property*

Plaintiffs fail to evidence that they do not possess the electric golf cart, John Deere Gator, restored motorcycle, and other personal property that Defendants allege they converted. Accordingly, Plaintiffs have failed to establish that they are entitled to judgment as a matter of law on the conversion claims pertaining to Defendants' personal property.

### 2. *Shares of Ride, Inc.*

Plaintiffs argue that the conversions claims for shares in Ride, Inc. are barred by *res judicata*, because the Indiana Court determined that Defendants never held an interest in the companies. The Indiana Court issued a final judgment that Defendants did not have an ownership interest in the companies. Accordingly, issue preclusion bars the conversion claim. *See Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012) ("Issue preclusion, or collateral estoppel, bars subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former lawsuit and that same fact or issue is presented in a subsequent suit. This rule applies even if the second adjudication is on a different claim.").

Because Plaintiffs seek to use issue preclusion defensively, the Court must also determine "whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Nat'l Wine & Spirits*, 976 N.E.2d at 704. The Court is confident that both considerations are satisfied. Plaintiffs are therefore entitled to judgment as a matter of law on the stock conversion claim.

### D. Temporary Restraining Order and Preliminary Injunction (Count V)

Plaintiffs argue that they are entitled to summary judgment on Count V because a request for injunctive relief does not state an independent cause of action.

The injunctive relief Defendants seek is largely based on their purported interest in the companies. This Court, based on the judgment of the Indiana Court, has found that Defendants have no interest in the companies. Since Plaintiffs have succeeded on the

merits of the underlying claim, there is no basis to grant injunctive relief to Defendants. *See Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). Moreover, the claim for injunctive relief is moot because the intervening decisions by the Indiana Court extinguish Defendants' interest in the outcome. *See Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001) ("A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue. A case becomes moot 'when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome.'" (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979))).

### E. Termination of Employment (Counts VI and VII)

Plaintiffs argue that Defendants were at-will employees and thus cannot maintain a claim relating to their discharge.[8] Kruse makes the additional argument that Defendants were employed only by the companies, not by him personally.

#### 1. *Employer*

Defendants allege a cause of action against Kruse for willful termination because he made employment decisions on behalf of Ride as the owner of the company. When the employer is a corporation, the proper party to sue is the corporation itself, not the individuals who comprise the corporation or act on its behalf. *See Kirby v. Cole*, 837 N.E.2d 839, 842 (Ohio App. 2005). There is no evidence that Kruse ever employed

---

[8] Defendants refer to these causes of action as "willful termination of employment." (Doc. 41 at 15-16; Doc. 59 at 3).

Defendants in his personal capacity.  (Doc. 55 at ¶ 46).  Kruse is therefore entitled to judgment as a matter of law.

### 2.  *At-Will Employees*

"The common-law doctrine of employment at will generally governs employment relationships in Ohio.  Under this doctrine, a general or indefinite hiring is terminable at the will of either the employee or the employer; thus, a discharge without cause does not give rise to an action for damages."  *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 528 (Ohio 2002).

Defendants argue that they qualify for the promissory estoppel exception to the default rule of at-will employment.  *See Helmick v. Cincinnati Word Processing, Inc.*, 543 N.E.2d 1212, 1217 (Ohio 1989) ("A demonstration of detrimental reliance on specific promises of job security can create an exception to the employment-at-will doctrine.").  Defendants rely exclusively on *Aldahan v. Tansky Sales, Inc.*, No. 99-AP-651, 2000 WL 780572 (Ohio App. June 20, 2000), for the proposition that a contract to acquire an ownership interest in a company can create promissory estoppel.

An employment promissory estoppel claim sounds in contract.  *See Mers v. Dispatch Printing Co.*, 483 N.E.2d 150, 155 (Ohio 1985) (presenting the issue as whether the employer "made representations which altered the terms of [employee's] at-will employment contract").  "[T]here is no separate cause of action for wrongful termination in Ohio" when the claim is premised on promissory estoppel.  *Aldahan*, 2000 WL 780572, at *14.  "Plaintiff's wrongful termination claim is a derivative of his breach of contract and his promissory estoppel claim."  *Id.*

Under Ohio law, a claim for promissory estoppel in the employment context requires a showing "(1) that the employer made a promise, (2) which it reasonably should have expected to induce action or forbearance by the employee, (3) that there was such action or forbearance, and (4) injustice can only be avoided by enforcement of the promise." *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1041 (6th Cir. 1992).

Defendants fail to establish the elements for a promissory estoppel claim. Defendants do not identify a promise sufficient to satisfy the first element. They also cannot demonstrate detrimental reliance, which must be "of a sufficiently definite and substantial nature." *Nilvar v. Osborn*, 711 N.E.2d 726, 737 (Ohio App. 1998). As a matter of law, forbearance from searching for other employment, as opposed to declining a specific employment offer, does not constitute detrimental reliance. *See Humprheys*, 966 F.2d at 1041 (finding that "plaintiff's own admission [that] he had not turned down a job offer in reliance on the statements" was fatal to his promissory estoppel claim); *Nilvar v. Osborn*, 711 N.E.2d 726, 737 (Ohio App. 1998) (concluding that the employee's "failure to seek other employment cannot constitute detrimental reliance to support his estoppel claim"). Accordingly, Plaintiffs are entitled to judgment as a matter of law on Counts VI and VII.

## IV.    CONCLUSION

For these reasons, Plaintiffs' motion for partial summary judgment (Doc. 50) is

**GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** as to the

causes of action for breach of contract, breach of fiduciary duty, conversion of stock,

temporary restraining order and preliminary injunction, and wrongful termination.  The

motion is **DENIED** as to the cause of action for conversion of personal property.

Still pending before the Court are the ten causes of action in Plaintiffs' amended

complaint and Counts III and VIII of Defendants' counterclaims.

**IT IS SO ORDERED**.

Date:  7/17/14                                                     *s/ Timothy S. Black*
                                                                                 Timothy S. Black
                                                                                 United States District Judge